[No. 3837–II.   Division Two.   February 24, 1981.]

FLO PEARCE, *Respondent,* v. MOTEL 6, INC.,
*Appellant.*

*Gregory F. Logue* and *Harold E. Winther,* for appellant.

*Robert I. Deutscher,* for respondent.

REED, C.J.—This is an appeal from a jury verdict award-ing plaintiff Flo Pearce $35,000 in damages for injuries she sustained in a slip and fall accident on defendant's prem-ises. The dispositive issue raised on appeal is whether it

was error not to give defendant's proposed instruction describing the circumstances under which a motel keeper is liable to its guests for injuries sustained on the premises. We hold the instruction should have been given and reverse and remand for new trial.

Defendant Motel 6, Inc., owns and operates a national chain of motels offering modest but comfortable accommodations at economical rates. Plaintiff Flo Pearce occupied a room with her husband in defendant's Fife facility near Tacoma. The Pearces had checked into the motel on July 5, 1976, while traveling on vacation from their home in California.

The accident giving rise to this action occurred when plaintiff fell as she entered the shower stall in the bathroom of her motel room. The shower compartment was of a fiberglass stall construction with a folding accordion–type door and no tub facilities. Plaintiff's testimony was that she first took the precaution of placing a bath towel on the bathroom floor outside the shower stall; after disrobing and running the water in the shower to the proper temperature, she stepped from the towel into the compartment with her right foot. As she transferred weight onto her right foot she slipped and fell, thereby sustaining injury to her left foot and leg.

At trial plaintiff pursued three principal theories of liability: (1) that defendant was negligent in not furnishing mats or by not applying some form of nonskid surface preparation to the shower floor pan; (2) that defendant was negligent in failing to provide grab bars in the shower's interior; and (3) that defendant's employees negligently left a dangerous soap or detergent film on the shower floor after cleaning.[1]

Testimony at trial indicated defendant had not supervised construction of the Fife motel unit, but had acquired

---

[1]This theory was not pleaded, but was interjected at trial after defendant offered evidence the showers were cleaned routinely with a "non–abrasive" detergent.

it after construction had been completed. The shower stalls used were common to those found on the market at the time the Fife facility was constructed. Plaintiff's expert testified that the stalls had been cleaned and maintained in such a manner that the fiberglass and Gel–Coat finish had retained the same shine, smoothness, and luster as the product had possessed when originally installed. The expert further testified, however, that the fiberglass industry had since improved methods of constructing fiberglass shower stalls such that newer stall floors are more slip resistant. Evidence was admitted which indicated that at the time of the accident at least two surface preparations were available which could have been applied to the early model or smooth surface pans to achieve a similar degree of slip resistance. One preparation is a form of paint which contains an abrasive material that hardens to a rough–textured surface. The other preparation is an adhesive strip which is impregnated with a similarly textured material. Either preparation could have been applied to defendant's shower floor to increase the degree of slip resistance.

In addition to the two shower floor preparations, the plaintiff's expert testified to a comparison he had made between the Fife unit's shower stall and a shower stall found in a new Motel 6 unit in Tumwater. Unlike the Fife facility, defendant had supervised construction of the Tumwater Motel 6. Although not entirely clear from the record, it appears the comparison was made for the purpose of suggesting that defendant was cognizant of both the dangers of and alternatives to smooth surface shower floors. The shower stalls in the Tumwater facility were installed some years after construction of the Fife facility and had been manufactured under the more modern technique of imparting a slip resistant surface to the stall at the time of fabrication.

Defendant's evidence was that, during its nearly 5 years of ownership of the Fife facility, there had been no reports of similar accidents nor had it received any complaints regarding the safety of the shower stalls.

Defendant's first assignment of error is directed to the denial of defendant's motion for directed verdict and judgment n.o.v. Defendant argues that the evidence was insufficient, as a matter of law, to establish either that the shower unit posed an unreasonable risk of harm to users, or that defendant should have realized that fact.

We have serious misgivings about the relevance of much of plaintiff's evidence. Plaintiff's expert appeared to posit his opinion primarily upon his comparison of the relative safety of the Fife and Tumwater facilities. It is of course not enough to say that shower A is more or less dangerous than shower B. No evidence was offered that the Fife unit did not meet industry standards. However, plaintiff described the shower pan surface as "slick as ice" and plaintiff's expert characterized it as constituting a "significant hazard potential for a slip and fall." Furthermore, we believe the evidence, while not strong, was enough to create a jury issue as to defendant's awareness of the condition and the relatively inexpensive means for correcting it. *Cf. Bidlake v. Youell, Inc.*, 51 Wn.2d 59, 315 P.2d 644 (1957) and *Doherty v. Arcade Hotel*, 170 Or. 374, 134 P.2d 118 (1943).

The same is not true, however, regarding plaintiff's theory that a chambermaid left a dangerous soap film on the shower floor; we note there is hardly a scintilla of evidence to support such a theory. Testimony revealed that after cleaning the shower floor with soap solution the shower was rinsed, dried, and checked by the head chambermaid. Plaintiff further testified that she personally ran the water in the shower for several moments before entering. Plaintiff's only basis for urging such a theory is that on the day following the accident, after the room had been cleaned, plaintiff felt the shower floor and observed it was "quite slippery–like" such that "it felt like there was grease or oil on it." Plaintiff's husband testified that when he examined the shower after it had been cleaned:

There was something that made it slick, yes. I couldn't tell if it was grease, oil, or just the nature of the material.

To conclude that plaintiff slipped on soap film on the basis of this evidence would be utter speculation. To sustain a finding of negligence the evidence must be substantial and not a mere scintilla. *Hojem v. Kelly,* 93 Wn.2d 143, 606 P.2d 275 (1980). The trial judge should not have permitted this theory to go to the jury.

After instructing on the general definitions of negligence and contributory negligence, burden of proof, proximate cause and damages, the trial court gave, as its only instruction defining the duty or duties owed by defendant to plaintiff, the following:

> The operator of a motel owes to a person who has an express or implied invitation to come upon the premises in connection with that business, a duty to exercise ordinary care for his safety. This includes the exercise of ordinary care to maintain in a reasonably safe condition those portions of the premises which such person is expressly or impliedly invited to use or which he might reasonably be expected to use.

█ The trial court refused, however, to give defendant's proposed instruction which read as follows:

> A hotel/motel operator is liable for physical harm caused to its guests by a condition of the premises if, but only if, it
>
> (a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such guests, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

As applied to plaintiff's basic theory that the shower as originally constructed and maintained was a dangerous instrumentality which defendant could have rendered safe by utilizing methods currently available, the proposed instruction was a correct statement of the law governing the case. The failure to give the instruction precluded defendant from meaningfully presenting its case and from arguing

its theories of defense to the jury and consequently of a fair trial. In *Leek v. Tacoma Baseball Club, Inc.,* 38 Wn.2d 362, 229 P.2d 329 (1951), the court said:

> Basic in the law of negligence is the tenet that the duty to use care is predicated upon knowledge of danger, and the care which must be used in any particular situation is in proportion to the actor's knowledge, actual or imputed, of the danger to another in the act to be performed. *Burr v. Clark,* 30 Wn. (2d) 149, 190 P. (2d) 769; 38 Am. Jur. 678, Negligence, § 32; 65 C.J.S. 351, Negligence, § 5.
>
> This principle is an integral part of the law relating to the liability of owners or occupants of premises. Generally speaking, the possessor of land is liable for injuries to a business visitor caused by a condition encountered on the premises only if he (a) knows or should have known of such condition and that it involved an unreasonable risk; (b) has no reason to believe that the visitor will discover the condition or realize the risk; and (c) fails to make the condition reasonably safe or to warn the visitor so that the latter may avoid the harm. *Hudson v. Kansas City Baseball Club,* 349 Mo. 1215, 164 S.W. (2d) 318, 142 A.L.R. 858; 2 Restatement of Torts 938, § 343; 38 Am. Jur. 754, Negligence, § 96; 65 C.J.S. 521, Negligence, § 45.

*Leek v. Tacoma Baseball Club, Inc., supra* at 365–66. Restatement (Second) of Torts § 343 (1965); *see also Knight v. Wandermere Co.,* 46 Wn.2d 768, 284 P.2d 1106 (1955); *Winkler v. Seven Springs Farm, Inc.,* 240 Pa. Super. Ct. 641, 359 A.2d 440 (1976).

▮ Plaintiff argues that defendant was entitled to no more than the general instruction which was given and was able effectively to argue its defenses to the jury. We do not agree. First, nowhere was the jury told that before it could find defendant had breached its duty of due care to plaintiff, it must find that defendant knew or should have known the shower facility presented an unreasonable risk of harm. Second, nowhere was the jury advised that defendant's duty was tempered by what it could reasonably expect its guests would perceive for themselves, *e.g.,* that fiberglass shower floors become slippery when wet. *Miller v. Shull,* 48

So. 2d 521 (Fla. 1950); *LaBart v. Hotel Vendome Corp.,* 213 F. Supp. 958 (D. Mass. 1963); *Dempsey v. Alamo Hotels, Inc.,* 76 N.M. 712, 418 P.2d 58 (1966), *overruled on other grounds* in *Williamson v. Smith,* 83 N.M. 336, 491 P.2d 1147 (1972). As instructed, the jury could have considered the care and attention exercised by plaintiff for her own safety only as such evidence bore on the defense of contributory negligence and not for any bearing it may have had on defendant's primary duty of due care. As stated in *Leek v. Tacoma Baseball Club, Inc., supra* at 366, one of the three conditions which must be met before the possessor of land may be found liable is that the possessor "has no reason to believe that the visitor will discover the condition or realize the risk". Restatement (Second) of Torts § 343(b) (1965). In short, the failure to give defendant's proposed instruction virtually rendered defendant an insurer upon a finding only that the shower fixture was unreasonably dangerous and proximately caused plaintiff's injury. Motel owners are not guarantors or insurers of the safety of their business invitees. *Cf. Hemmen v. Clark's Restaurant Enterprises,* 72 Wn.2d 690, 434 P.2d 729 (1967); *Engdal v. Owl Drug Co.,* 183 Wash. 100, 48 P.2d 232 (1935).

Each party to a negligence action is entitled to have his theory of the case presented to the jury by proper instructions, there being evidence in support thereof. *Egede–Nissen v. Crystal Mountain, Inc.,* 93 Wn.2d 127, 606 P.2d 1214 (1980). When there is a request for an appropriate instruction which relates the principles of law involved to the issues in the case, it is not enough to simply apprise the jury in general or abstract terms that a party claims the other was negligent. *Kiemele v. Bryan,* 3 Wn. App. 449, 476 P.2d 141 (1970). As stated in *Dabroe v. Rhodes Co.,* 64 Wn.2d 431, 392 P.2d 317 (1964):

> Nowhere in the instructions is there any reference to what the claimed negligence of the defendants might be, except the statement of plaintiffs' contention in instruction No. 1, "that the defendants negligently operated and maintained the escalator."

. . .
The plaintiffs were, of course, entitled to have their theories of the case presented to the jury by proper instructions, there being evidence to support them; and their right was not affected by the fact that the law was covered in a general way by the instructions given. *DeKoning v. Williams* (1955), 47 Wn. (2d) 139, 141, 286 P. (2d) 694; *Allen v. Hart* (1948), 32 Wn. (2d) 173, 176, 201 P. (2d) 145.

(Footnote omitted.) *Dabroe,* at 435.

The prejudice to defendant in this case was compounded by the court's refusal to give defendant's "issues" instructions.[2] *Woods v. Goodson,* 55 Wn.2d 687, 349 P.2d

---

[2]Defendant's proposed instruction No. 6 reads as follows:

"(1) The plaintiff claims that the defendant was negligent in one or more of the following respects:

"(a) Failing to provide shower mats or other safety devices to place on the floor of the shower stall;

"(b) Failing to install handrails or other safety devices to enable plaintiff to hold onto for support;

"(c) Providing plaintiff with a shower stall which was defective in design for the safety of persons using the same, that is, the floor of the shower stall was smooth and slippery and said stall had no handrails;

"(d) Failing to exercise due care and caution for the safety of the plaintiff.

"The plaintiff claims that one or more of these acts was a proximate cause of the injuries sustained. The defendant denies these claims.

"(2) In addition the defendant claims as an affirmative defense that the plaintiff was contributorily negligent in the following respects:

"(a) Failing to exercise due care and caution in the use of defendant's shower facilities.

"The defendant claims that such failure was a proximate cause of plaintiff's own injuries. The plaintiff denies this claim.

"(3) The defendant further claims and plaintiff denies the following affirmative defense:

"(a) Plaintiff knew and appreciated the specific dangers and hazards associated with the activity in which she was engaged and voluntarily assumed the risks incidental thereto.

"(4) Lastly, the defendant denies the nature and extent of the injuries claimed by plaintiff to have proximately resulted from defendant's alleged acts or omissions."

Proposed instruction No. 7 reads as follows:

"The foregoing is merely a summary of the claims of the parties. You are not to take the same as proof of the matters claimed; and you are to consider only those matters which are established by the evidence. These claims have been outlined solely to aid you in understanding the issues."

731 (1960); *see also* WPI 20.01, 20.05, 6 Wash. Prac. 117 (1980) and the official comments to WPI, pages 119–20. This omission must have been particularly confusing to the jury because the court's burden of proof instruction contained the following:

> The plaintiff has the burden of proving each of the following propositions:
> First, that the defendant acted, or failed to act, *in one of the ways claimed* by the plaintiff and that in so acting or failing to act, the defendant was negligent;
>
> . . .
> The defendant has the burden of proving both of the following propositions:
> First, that the plaintiff acted, or failed to act, *in one of the ways claimed* by defendant, and that in so acting, or failing to act, the plaintiff was negligent . . .

(Italics ours.)

Because of these errors in the instruction phase of the case, the judgment on the verdict must be reversed. Accordingly, we do not reach defendant's other assignments of error, except to note that the trial court was correct in refusing an instruction based on WPI 120.06.02.[3] Such an instruction pertains only where there is evidence of a temporary condition of the premises, created by someone other than the possessor or its agents. *Hampton v. Lynch Motor Co.*, 6 Wn. App. 644, 495 P.2d 345 (1972). Here, there was no evidence to support such an instruction.

---

[3]Defendant's proposed instruction No. 16 reads as follows:

"In order to support a finding of negligence, a temporary unsafe condition of the premises which was not created by defendant or defendant's employees, and which was not caused by negligence on defendant's part, must either have been brought to the actual attention of defendant or defendant's employees or it must have existed for a sufficient length of time and under such circumstances that defendant or defendant's employees should have discovered it in the exercise of ordinary care."

Reversed and remanded for new trial.

PEARSON and PETRICH, JJ., concur.

Reconsideration denied March 30, 1981.

Review denied by Supreme Court June 12, 1981.