[No. 7485-1-II. Division Two. February 5, 1987.]

DAVID HUSTON, *Respondent,* v. THE FIRST CHURCH OF GOD, *Appellant.*

*Randall B. Printz* and *Read, Wolfe, Hannan, Mercer & Mullins,* for appellant.

*Robert D. Mitchelson* and *Lee & Mitchelson,* for respondent.

ALEXANDER, J.—The First Church of God appeals from a judgment entered after a jury verdict in favor of David Huston for damages resulting from the Church's alleged negligence in maintaining a hallway where Huston slipped and fell. We reverse.

Huston is a member of the The First Church of God in Vancouver, Washington. After attending that Church for some time, Huston decided to be baptized. The Church's baptismal rites required that persons be fully immersed in a large baptismal tank located in the Church sanctuary. Before being baptized, Huston twice met with the church pastor, Gerald Marvel, to discuss the baptism procedure. During these meetings, Pastor Marvel told Huston that he should be careful at the baptism because water would drip

from the candidates' clothes, and as a result, the floor would be wet and slippery. Marvel instructed Huston that on the day of baptism, he should wear old clothes and tennis shoes into the baptismal tank. Marvel also told Huston to return to the bathroom in the pastor's study to change into his street clothes after the baptism was completed. Huston testified that he understood that after he changed clothes he was to return to the sanctuary by way of the hallway that he had come through from the baptism. The evidence revealed that the hallway floor was covered with "linoleum."

Another route from the pastor's study to the sanctuary led through the carpeted church offices. Witnesses testified that other members had used that route to return to the sanctuary from the bathroom after baptisms. Pastor Marvel maintained that baptismal candidates, including Huston, were not instructed to use any particular route.

On March 2, 1980, Huston and several other persons were baptized at the Church. After the baptism, Huston and three teenage boys returned to the bathroom in the study and changed clothes. Upon emerging from the study, Huston looked at the hallway floor, saw the water, and told the boys to be careful because the floor would be slippery "like we was told." Huston proceeded to step into the linoleum–covered hallway, at which point he slipped and fell, suffering a torn rotator cuff in his shoulder.

Following the accident, the Church's insurance company paid Huston a total of $12,420.31. Huston brought a negligence action against the Church, and eventually the jury returned a verdict in his favor for the sum of $130,000. The trial court entered judgment for $125,247.55, offsetting the jury's verdict by $4,752.45, "for medical bills paid, . . ." The Church appeals the judgment.

The Church asserts that the trial court erred in refusing to give its proposed instruction, which reads:

> A Church is liable for physical harm caused to a member by a condition encountered on the premises only if it:
> (a) Knows or should have known of such condition

and that it involved an unreasonable risk, and

(b) Has no reason to believe that the member will discover the condition or realize the risk, and

(c) Fails to make the condition reasonably safe or to warn the member so that the member may avoid the harm.

The court instead instructed the jury as follows:

The owner of a public building owes to a person who has an express or implied invitation to come upon the premises in connection with that operation, a duty to exercise ordinary care for his or her safety. This includes the exercise of ordinary care to maintain in a reasonably safe condition those portions of the premises which such person is expressly or impliedly invited to use or might reasonably be expected to use.[1]

In support of its contention that its proposed instruction should have been given, the Church cites *Pearce v. Motel 6, Inc.,* 28 Wn. App. 474, 624 P.2d 215, *review denied,* 95 Wn.2d 1024 (1981). In *Pearce,* a person slipped and fell when stepping into a shower stall at a motel. At trial, the defendant motel proposed the following instruction:

A hotel/motel operator is liable for physical harm caused to its guests by a condition of the premises if, but only if, it

(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such guests, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

*Pearce,* 28 Wn. App. at 478. This instruction is identical in all material respects to Restatement (Second) of Torts § 343 (1965).

The trial court in *Pearce* refused to give the motel's

---

[1]The Church has assigned error only to the trial court's failure to give its proposed instruction. It has not assigned error to the instruction given by the trial court.

proposed instruction, and instead gave an instruction identical to that given by the trial court in this case. *Pearce,* 28 Wn. App. at 478. The court in *Pearce* found that the failure to give the motel's proposed instruction was error, stating that "[t]he failure to give the instruction precluded defendant from meaningfully presenting its case and from arguing its theories of defense to the jury and consequently of a fair trial." *Pearce,* at 478–79. The court went on to cite *Leek v. Tacoma Baseball Club,* 38 Wn.2d 362, 365–66, 229 P.2d 329 (1951), in which the Supreme Court said:

> Basic in the law of negligence is the tenet that the duty to use care is predicated upon knowledge of danger, and the care which must be used in any particular situation is in proportion to the actor's knowledge, actual or imputed, of the danger to another in the act to be performed.
>
> This principle is an integral part of the law relating to the liability of owners or occupants of premises. Generally speaking, *the possessor of land is liable for injuries to a business visitor caused by a condition encountered on the premises only if he (a) knows or should have known of such condition and that it involved an unreasonable risk; (b) has no reason to believe that the visitor will discover the condition or realize the risk; and (c) fails to make the condition reasonably safe or to warn the visitor so that the latter may avoid the harm.*

(Citations omitted. Italics ours.)

The court in *Pearce,* after citing *Leek,* went on to note that the general instruction given in *Pearce* was inadequate because:

> First, nowhere was the jury told that before it could find defendant had breached its duty of due care to plaintiff, it must find that defendant knew or should have known the shower facility presented an unreasonable risk of harm. Second, nowhere was the jury advised that defendant's duty was tempered by what it could reasonably expect its guests would perceive for themselves, *e.g.,* that fiberglass shower floors become slippery when wet.

*Pearce,* 28 Wn. App. at 479.

The observations of the court in *Pearce* are applicable in

the present case. Here, the trial court's general instruction failed to inform the jury that in order to find the Church liable, the jury must find that the Church knew or should have known that the hallway floor presented an unreasonable risk of harm. Further, the jury was not instructed that the Church's duty to its invitee was diluted by what Huston admittedly knew: that those being baptized should be careful because the hallway floor was wet and slippery. The Church, therefore, was precluded from arguing its theory of the case. The proposed instruction, which contains the pertinent language of *Leek,* would have permitted presentation of the Church's theory. The trial court erred in failing to give the proposed instruction.[2]

The Church argues further that the trial court erred by failing to grant directed verdict or summary judgment in its favor on the ground that Huston was aware of the danger presented by a wet floor. Although the denial of a summary judgment motion is interlocutory and not an appealable ruling, the issue can be reviewed after trial in an appeal from final judgment. *Rodin v. O'Beirn,* 3 Wn. App. 327, 332, 474 P.2d 903 (1970).

A challenge to the sufficiency of the evidence in the form of a motion for a directed verdict admits, for the purposes of the motion, the truth of the nonmoving party's evidence and all reasonable inferences drawn therefrom. *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 533, 554 P.2d 1041 (1976). Specifically, in ruling on such a motion, the evidence should be considered in the light most favorable to the nonmoving party. *Rasor,* 87 Wn.2d at 534. There is no element of discretion vested in the trial court. The motion should be granted only in those cases where it can be held as a matter of law that no reasonable inferences or

---

[2]While we hold that the court erred by refusing to give the Church's requested instruction, we believe that on retrial it would be preferable for the trial court to give the jury an instruction equivalent to that held to be appropriate in *Pearce v. Motel 6, Inc., supra.* Although little difference exists between the instruction requested here and that requested in *Pearce,* we believe that the language of the instruction sought in *Pearce* is more clear and understandable.

competent evidence would sustain a verdict. *Shelby v. Keck,* 85 Wn.2d 911, 913, 541 P.2d 365 (1975). These same rules apply for review of a summary judgment. *See Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

The Church argues that under the *Pearce* and *Leek* cases, Huston's knowledge that the floor was wet and slippery was enough to preclude his recovery as a matter of law. We believe, however, that notwithstanding Huston's knowledge of the condition of the floor, issues of fact exist regarding the degree of Huston's awareness of the risk posed by the condition and as to his ability to protect himself against the danger caused by the condition.

The Church next argues that the trial court erred by not granting a judgment notwithstanding the verdict on the grounds that, first, the Church's proposed instruction was required and that, second, Huston was contributorily negligent as a matter of law.

The standards set forth above for the review of a denial of a directed verdict also apply to the denial of a judgment n.o.v. *Rasor v. Retail Credit Co., supra.* We believe that the Church's first ground for seeking a judgment n.o.v. is meritless. Although the trial court erred in refusing to give the Church's proposed instruction, it does not follow that the trial court erred in failing to enter a judgment n.o.v. As stated earlier, even with the correct instruction, fact questions still exist.

The Church's contention that Huston was contributorily negligent as a matter of law also fails. In addition to the general rules for a review of judgment n.o.v. stated above, courts have held that the trial court should grant defendant's motions on the ground of contributory negligence as a matter of law only in the clearest of cases when the court can conclude "that reasonable minds could not have differed in their interpretation of the factual pattern." *Browning v. Ward,* 70 Wn.2d 45, 48–49, 422 P.2d 12 (1966). *See also Bordynoski v. Bergner,* 97 Wn.2d 335, 338, 644 P.2d 1173 (1982).

In determining whether a person was contributorily neg-

ligent, "[T]he inquiry is whether or not he exercised that reasonable care for his own safety which a reasonable man would have used under the existing facts and circumstances, and, if not, was his conduct a legally contributing cause of his injury." *Rosendahl v. Lesourd Methodist Church*, 68 Wn.2d 180, 182, 412 P.2d 109 (1966).

The Church argues that Huston was contributorily negligent because he chose to return to the sanctuary by way of the hall covered with water when another carpeted route existed that he could have taken. Huston, however, testified that he did not know that he could go the other way, through the offices. Further, Pastor Marvel stated that although he did not prescribe the route to take, he also did not specifically tell the baptism candidates about the alternate route. It appears that reasonable minds could differ as to whether the two routes were known to Huston. Therefore, the trial court did not err by refusing to grant a directed verdict or a judgment n.o.v.

The Church finally argues that the court improperly refused to offset the $130,000 judgment by the $7,655.36 paid by the Church's insurance company to Huston. Because we are reversing the judgment and remanding for new trial, we need not resolve this issue. In any case, the record on this issue is currently insufficient to permit us to fairly resolve the issue. If this issue should arise again, a more complete record on this issue should be provided.

We reverse and remand for a new trial in accordance with this opinion.

REED, C.J., and PETRICH, J., concur.

Reconsideration denied March 26, 1987.

Review denied by Supreme Court June 2, 1987.