[No. 15510-2-III.   Division Three.   September 2, 1997.]

NEETA I. BUNTING, ET AL., *Respondents*, v. THE STATE OF WASHINGTON, *Petitioner*.

---

648

*Christine O. Gregoire, Attorney General,* and *Rene D. To-misser* and *Joseph S. Montecucco, Assistants,* for petitioner.
*Roger A. Felice* and *Roger A. Felice, P.S.,* for respondents.
*Timothy E. Bunting,* pro se.

SCHULTHEIS, A.C.J. — In 1989 Timothy Bunting's wife Neeta and son Shawn settled with him and his insurance company for injuries they sustained when Timothy hit a guardrail and wrecked the car in which they were riding. For $30,000 they released all claims against Timothy and the insurance company. Three years later Timothy, Neeta and Shawn filed a negligence suit against the State. After an additional two years, and just two months before the scheduled trial date, Neeta and Shawn purported to rescind their releases of Timothy and moved to realign him as a defendant in hopes of holding him and the State jointly and severally liable. The trial court upheld the validity of the rescission, permitted the realignment and held the State lacked standing to challenge the changes. We granted discretionary review. The State contends the purported rescission is invalid and Timothy is a released, settling tort-feasor who cannot be joined with the State as a defendant. It also contends it has standing to raise the issue because it is the target of the motion and has a personal interest at stake. We agree with the State and reverse and remand.

In March 1989 Timothy lost control of his jeep and hit a guardrail. The vehicle rolled down the embankment and he and his passengers, including his wife Neeta and son Shawn, were injured. Shawn told investigating officers his father drifted off the road while trying to light a cigarette, while Timothy said he hit ice. Timothy was cited for and pleaded guilty to negligent driving.

Neeta and Shawn filed claims against Timothy's insurance policy issued by Farmers Insurance Company of Washington. They both settled in June 1989, Shawn for $10,000 and Neeta for $20,000, and each signed a release discharging Timothy and Farmers Insurance from all claims arising from the accident.

In May 1992 Timothy, Neeta and Shawn filed suit

against the State alleging negligent design, construction and maintenance of the guardrail. The State answered and counterclaimed against Timothy for his comparative fault. In July 1995 the cause was set for trial in February 1996.

In December 1995 the Buntings executed a "mutual rescission agreement" among themselves, purportedly rescinding Neeta's and Shawn's releases of Timothy. New counsel appeared for Timothy and the Buntings filed a motion to realign the parties, making Timothy a defendant "[i]n order to overcome the adverse consequences and abolition of joint and several liability . . . ." The State argued the realignment was improper because the statute of limitations barred naming Timothy as a defendant, Neeta and Shawn had both released him from any and all claims, and the Buntings should not be allowed to use a collusive artifice to impose joint liability on the State for Timothy's negligence.

The trial court granted the motion and allowed the filing of an amended complaint. In a letter denying the State's motion for reconsideration, the court explained:

[The State] in essence contends that once there has been a release of a tort-feasor there can thereafter be no joint and several liability between that tort-feasor and another against whom a fault-free plaintiff might obtain judgment.

RCW 4.22.070 provides for joint and several liability in favor of fault-free plaintiffs only as to defendants against whom judgment is entered, excluding persons who have been previously released.

I believe, however, that the reference to "entities released by the claimant" in RCW 4.22.070 must refer to those entities released following a reasonableness hearing at which all parties have had a right to participate.

Here there was no such reasonableness hearing and the release previously executed has been rescinded. Under these circumstances the court cannot say as a matter of law that no judgment could be entered against the party previously released. The [State] has no standing to assert defenses avail-

able to another party. Accordingly, the plaintiffs' motion to realign to allow the assertion of a claim against the previously released party is proper and should be granted.

■ Before we address the substantive issues in this case, we must first decide whether the State has standing to raise them. The doctrine of standing generally prohibits a party from asserting another person's rights; however, a party has standing to raise an issue if it has a distinct and personal interest in the outcome of the case and can show it would benefit from the relief requested. *Timberlane Homeowners Ass'n v. Brame*, 79 Wn. App. 303, 307-08, 901 P.2d 1074 (1995), *review denied*, 129 Wn.2d 1004 (1996); *Erection Co. v. Department of Labor & Indus.*, 65 Wn. App. 461, 467, 828 P.2d 657 (1992), *aff'd*, 121 Wn.2d 513, 852 P.2d 288 (1993); *Queen Anne Painting Co. v. Olney & Assocs., Inc.*, 57 Wn. App. 389, 392, 788 P.2d 580 (1990). The State meets those requirements. Consequently, it has standing to challenge the realignment of the parties and the validity of the purported rescission that provides the basis for realignment.

■ The State contends the trial court misinterpreted RCW 4.22.070. We agree that the court's determination that the reference to "entities released by the claimant" in RCW 4.22.070 must refer to those entities released after a reasonableness hearing is wrong. It presumes the necessity of a hearing any time a claimant releases a tortfeasor. But neither the language nor the purpose of the statute supports that presumption.

RCW 4.22.060, governing the effect of settlement agreements on nonsettling defendants and providing for a reasonableness hearing, is part of the 1981 tort revision legislation that implemented contributory fault but retained joint and several liability in all cases. See the discussion in *Waite v. Morisette*, 68 Wn. App. 521, 524, 843 P.2d 1121, 851 P.2d 1241, *review denied*, 122 Wn.2d 1006 (1993). In 1986 the Legislature further revised Washington's tort law by establishing proportionate liability, making joint and several liability the exception rather than

the rule. Initially, under RCW 4.22.070(1) the trier of fact is directed to determine the percentage of total fault attributable to each entity that caused the claimant's damages, including the claimant, defendants and entities released by the claimant or immune from liability; and to enter judgment against each defendant, except those who have been released or are immune or have prevailed on some other individual defense, for its proportionate share. Excluding special kinds of cases listed in subsection (3), the liability of each defendant is several only and not joint except under (1)(a) when defendants act in concert or a person acts as an agent or servant of a party, or under (1)(b) when the claimant is fault free. (Only subsection (1)(b) is at issue here.)

Then, once fault has been apportioned and judgment entered, one looks to RCW 4.22.070(2), which provides:

> If a defendant is jointly and severally liable under one of the exceptions listed in subsections (1)(a) or (1)(b) of this section, such defendant's rights to contribution against another jointly and severally liable defendant, and the effect of settlement by either defendant, shall be determined under RCW 4.22.040, 4.22.050, and 4.22.060.

There would not be any need for a reasonableness hearing unless Timothy and the State could be jointly and severally liable. *See Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 295-98, 840 P.2d 860 (1992).[1] In this case Timothy clearly could not be a jointly and severally liable defendant without rescission of the insurance settlement and release. Thus, the dispositive issue is whether the Buntings' purported rescission of the releases was valid and effective.

The State contends the purported rescission of the releases is invalid because not all contracting parties

---

[1]*Washburn*, 120 Wn.2d at 298, likens arguing the necessity of a defendant's involvement in reasonableness hearings without first demonstrating the necessity of the hearings themselves to putting the cart before the horse. But the court did not address the necessity of the hearings; instead, it left that issue for another day.

consented to it and the Buntings did not return the insurance proceeds they received in settlement of the claims being released. In addition, the State argues the purported rescission was not timely. Finally, as a matter of public policy, the State argues rescission should not be allowed under these circumstances. It asserts the Buntings' procedural sham would permit them to settle with one tort-feasor and keep the settlement proceeds, and then retain that tort-feasor as a party in order to maintain joint liability for nonsettling defendants. The Buntings argue the releases were never valid, but if they were, they contend they could agree to rescind them as they pertained to the discharge of Timothy only.

█ As the State points out, there is no factual or legal support for the Buntings' argument that the releases were invalid because they did not seek legal counsel, or because they did not understand the consequences of their actions or because Timothy did not give consideration. In addition, because the Buntings accepted and spent the benefits of the releases, they are now estopped from asserting the releases are invalid. *Dunbabin v. Allen Realty Co.*, 26 Wn. App. 660, 666, 613 P.2d 570 (1980). Therefore, unless the releases were validly rescinded, Neeta and Shawn cannot now name Timothy as a defendant in this lawsuit.

██ A release is a contract. *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 187, 840 P.2d 851 (1992). In order for rescission to be legally operative, all parties to the contract must consent to its rescission. *In re Estate of Wittman*, 58 Wn.2d 841, 844, 365 P.2d 17 (1961); *Modern Builders, Inc. v. Manke*, 27 Wn. App. 86, 92, 615 P.2d 1332, *review denied*, 94 Wn.2d 1023 (1980). Here, the rescission was not legally operative because an essential party to the releases, Farmers Insurance, did not consent to the rescission.

██ Because Farmers Insurance did not consent to rescission, the parties' remaining arguments about timing, acceptance of benefits and so forth are immaterial. We note, however, that one who wants to rescind a contract

must act with reasonable promptness or risk waiving the right to rescind. *Ferguson v. Jeanes*, 27 Wn. App. 558, 565, 619 P.2d 369 (1980). Under the circumstances, the Buntings have no excuse for the delay. Moreover, rescission contemplates restoration of the parties to as near their former position as possible; so, to effectuate a valid rescission, the Buntings arguably would have had to offer to give back to Farmers Insurance the $30,000 they received for the releases and settlement of their claims against Timothy. *See Simonson v. Fendell*, 101 Wn.2d 88, 93, 675 P.2d 1218 (1984). They did not. Instead, they wish to retain the settlement proceeds and still assert their claims against Timothy. That is not a rescission of the settlement agreement and releases. There is no support for the Buntings' assertion that the releases are severable, so that they can be rescinded as to Timothy but not Farmers Insurance. The insurance company's involvement was entirely derivative: it was settling claims against Timothy. Finally, neither equity nor public policy favors the Buntings' attempt to manipulate the system in an effort to obtain payment from the State for Timothy's fault.

The decision of the superior court is reversed and the matter is remanded for further proceedings consistent with this opinion.

KURTZ and BROWN, JJ., concur.